IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TRAVANTI DOMINIQUE SCHMIDT,

        Plaintiff,

v.

LIEUTENANT ESSER and CO
OSWALD,

        Defendants.

OPINION AND ORDER

15-cv-538-wmc

---

*Pro se* litigant Travanti Dominique Schmidt brings this action under 42 U.S.C. §1983, alleging that defendants DOC Lieutenant Esser and Correctional Officer Oswald violated his rights by using excessive force to extract him from his cell. Before the court is defendants' motion for summary judgment. (Dkt. #23.) In support of their motion, defendants argue that Schmidt failed to properly exhaust available administrative remedies with respect to his claim in compliance with the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). The court agrees and will dismiss this case without prejudice.

UNDISPUTED FACTS

**A. Plaintiff's Claim**

Plaintiff Schmidt is an inmate at Wisconsin Secure Program Facility ("WSPF"). Defendants Esser and Oswald are employees of the Wisconsin Department of Corrections, employed at WSPF. The dispute arises from an incident that occurred on May 5, 2013. Plaintiff alleges that defendant Esser used excessive force by spraying him with chemical agents to remove him from his cell. Plaintiff further alleges that defendant Oswald lied about Esser's actions and falsely accused Schmidt of assaulting him in an attempt to justify

or cover up Esser's excessive use of force. This court granted plaintiff leave to proceed against both defendants on excessive force claims. (*See* Order on Leave to Proceed (dkt. #8) 6.)

B. **Administrative Complaints**

Schmidt filed three complaints about defendant Esser's conduct: one on January 13, 2014, and two on April 6, 2015. (Brown Decl. (dkt. #25) ¶¶ 13-14, 23-24.) These complaints do not include a reference to false accusations allegedly made by defendant Oswald. In his declaration, William Brown, the Institution Complaint Examiner for WSPF, avers with respect to the January 13, 2014 complaint:

> On January 14, 2014, I rejected the complaint as beyond the 14 calendar day limit, noting that pursuant to Wisconsin Administrative Code § DOC 310.11(5)(d), the "inmate submitted the complaint beyond the 14 calendar days from the date of the occurrence giving rise to the complaint and provides no good cause for the ICE to extend the time lines."

(Brown Decl. (dkt. #25) ¶ 15.) The declaration contains nearly identical language describing denial of the two April 6, 2015, complaints filed against Esser. (Brown Decl. (dkt. #25) ¶¶ 25, 31.)

OPINION

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of administrative remedies is a "condition precedent to suit." *Dixon v. Page,* 291 F.3d 485, 488 (7th Cir. 2002); *see also*

*Perez v. Wis. Dep't of Corr.*, 183 F.3d 532, 535 (7th Cir. 1999) (holding that where administrative remedies have not been exhausted, "the district court lacks discretion to resolve the claim on the merits"). Wisconsin law provides that "[a]n inmate shall file a complaint within 14 days after the occurrence giving rise to the complaint." Wis. Admin. Code DOC § 310.07. Since exhaustion is an affirmative defense, defendants bear the burden of establishing plaintiff's failure to exhaust. *Jones v. Bock,* 549 U.S. 199, 216 (2007).

The Wisconsin Department of Corrections ("DOC") maintains an Inmate Complaint Review System ("ICRS") in all state adult correctional facilities in order to afford inmates "a process by which grievances may be expeditiously raised, investigated, and decided." Wis. Admin. Code § DOC 310.01. Once an inmate files a formal complaint, DOC assigns an Inmate Complaint Examiner ("ICE") to investigate and recommend a decision to the "appropriate reviewing authority," such as a warden, bureau director, administrator or designee who is authorized to review and decide an inmate complaint at the institution level. *Id*. at § DOC 310.07(2). After investigation, an ICE may recommend a decision or return a complaint to the inmate if it does not comply with ICRS procedure. *Id*. at § DOC 310.07(1).

If an inmate has submitted a proper complaint that complies with procedure, he has the right to appeal any adverse decision to the Corrections Complaint Examiner ("CCE"), who will review the complaint and make a recommendation to the Office of the Secretary. *See id*. at § DOC 310.13. The Secretary of the Wisconsin Department of Corrections shall review the CCE's report and make a final decision. *See id*. at § DOC 310.14. ICRS was available to Schmidt while he was incarcerated at WSPF. Indeed,

Schmidt had used ICRS previously to file complaints against prison staff about various matters, such as the condition of his cell. (Brown Decl., Ex. 3 (dkt. #25-3) 6.)[1]

Because there is no evidence that plaintiff so much as attempted to file an administrative complaint against defendant Oswald, the court will dismiss the claims made against him. "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Pozo v. McCaughtry,* 286 F.3d 1022, 1024 (7th Cir. 2002). In his response to defendants' motion for summary judgment, plaintiff merely restates his initial allegations against defendant Oswald and does not address his failure to file an administrative complaint. (Pl.'s Opp'n (dkt. #31) 2-3.) Because plaintiff's failure to exhaust available administrative remedies before filing suit in federal court is not disputed with respect to defendant Oswald, defendants are entitled to summary judgment on this issue. Accordingly, plaintiff's claims against defendant Oswald will be dismissed without prejudice. *See Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) (dismissal for failure to exhaust is always without prejudice).

In contrast, plaintiff used ICRS to file three complaints against defendant Esser, albeit after the 14-day deadline had already lapsed. Plaintiff argues that the assigned complaint examiner abused its discretion by failing to grant a good cause exception to the deadline because he is illiterate and needs the help of other inmates to file his claims. (Pl.'s

---

[1] Plaintiff also suggests that Federal Rule of Civil Procedure 56 requires a "broad reading" of the underlying administrative law. (Pl.'s Opp'n (dkt. #31) 7.) However, plaintiff's argument that he "is suppose[d] to be given the benefit of the doubt if the meaning of exhaustion could be interpreted in two ways" misapplies Rule 56's standard for reviewing a motion for summary judgment. (*Id.*) Rule 56 does not require the reviewing body to make *legal interpretations* in the plaintiff's favor, it merely directs that the reviewing body refer to the *evidence* in the light most favorable to the party opposing to the motion, which the court has done in reviewing the record evidence here

4

Opp'n (dkt. #31) 9 (citing *Sherman v. Quinn* 668 F.3d 421, 425 (7th Cir. 2012) (holding that a good cause exception "applies in situations where there is no fault—excusable or otherwise.")).) Although plaintiff's cite to *Sherman* is not on point -- because it applies to extensions to filing notice of appeal and not the filing of administrative complaints -- Wisconsin's administrative regulations do allow for a good cause exception for filing deadlines of inmate complaints. Wis. Admin. Code DOC § 310.07 ("At the discretion of the ICE, a late complaint may be accepted for good cause."); *see also Pyles v. Nwaobasi*, 829 F.3d 860, 866 (7th Cir. 2016) (recognizing good faith exception to exhaustion of administrative claims for § 1983 suits).

Usually, "good cause" is "occasioned by something that is not within the control of the movant." *Id.* at 866; *see also United States v. Hirsch*, 207 F.3d 928, 929–30 (7th Cir. 2000) (suggesting that a clerk's failure to perform a ministerial act was sufficient to establish good cause for untimely appeal when such omission would prejudice a criminal defendant). To determine whether the examiner abused his discretion by not affording plaintiff a good cause exemption, therefore, the relevant question is whether plaintiff's failure to file his claims in a timely manner was due to circumstances that were reasonably beyond his control. Here, plaintiff cites several reasons for his failure to file, including that he was on "medical observation status," is "impaired, handicapped, [and] illiterate," and has limited English proficiency. (Pl.'s Opp'n (dkt. #31) 9.) Plaintiff also claims that an inmate who had previously helped him file complaints was not willing to assist him due to fear of retaliation. (*Id*. at 4.)

The court rejects each of plaintiff's reasons for claiming entitlement to a good cause exception. First, plaintiff argues he is entitled to good cause because he was placed under "medical observation status." (Pl.'s Opp'n (dkt. #31) 8.) Even assuming that being placed on "medical observation status" would hinder plaintiff's efforts to file a complaint, plaintiff was admitted for clinical observation on April 10, 2013, and was released on April 29, nearly a week *before* the alleged incidents took place. (Brown Decl., Ex. 3 (dkt. #25-3) 6.)

Second, plaintiff's administrative record belies any argument that he was not able to file timely a complaint, whether because of his alleged placement on medical observation status or because of "impairment, handicap [or] illiteracy." (Pl.'s Opp'n (dkt. #31) 9.) Plaintiff managed to file an ICRS complaint regarding the conditions of his cell on May 7, 2013, just two days after the alleged incidents took place. (Brown Decl., Ex. 3 (dkt. #25-3) 5.) He proceeded to file another complaint on May 9, 2013, alleging that he was not given a shower while in observation. (*Id.* at 159-62.) On May 16, 2013, he filed a third complaint, alleging that a member of the prison staff had addressed him using obscene language. (*Id.* at 185-89.) Plaintiff's brief in opposition offers no explanation of why, if he lacked the capacity to file an excessive force claim due to his illiteracy, he was able to file three other complaints within the same 14-day window. Because plaintiff has not submitted evidence to contradict the timeline contained in Brown's deposition, or to allege the extent of his incapacity, the court rejects this argument.

Finally, plaintiff argues that he was unable to file a timely complaint because another inmate who typically helps him was unwilling to assist him due to fear of retaliation. (Pl.'s Opp'n (dkt. # 31) 4.) This assertion is improbable, even when taken at

6

face value.  If the person to whom the plaintiff is referring is the same person who assisted him in filing the May 7, 9, and 16 claims, plaintiff provides no explanation for the individual's unwillingness to help file the instant claim, nor if he filed those complaints on his own or with assistance of another person, why he could not have done so in filing timely the complaint at issue here.  Plaintiff has also failed to provide any evidence to create a genuine issue of material fact regarding this unknown person's fear of retaliation.  With respect to his claims against defendant Esser, therefore, the court finds that plaintiff is not entitled to a good cause exception to the 14-day filing requirement.  As such, defendants' motion with respect to plaintiff's claims against Esser will also be granted, and those claims will similarly be dismissed without prejudice.

Plaintiff's filings raise two other issues warranting brief comment by the court.  Plaintiff contends that even if he is not afforded a good faith exception, he is entitled to a favorable judgment based on the merits of his claim.  (Pl.'s Opp'n (dkt. #31) 6-7.)  The law is clear, however, that even if plaintiff has raised an an issue of material fact with respect to the merits of his claim, a reviewing court cannot reach the merits of a claim if plaintiff has not exhausted his administrative remedies.  *Dixon*, 291 F.3d at 488; *Perez*, 183 F.3d at 535 (where administrative remedies have not been exhausted, "the district court lacks discretion to resolve the claim on the merits").  Plaintiff also seeks assistance in recruiting pro bono counsel, representing that he is "not competent to articulate and prosecute this case." (Pl.'s Opp'n (dkt. #31) 11.)  There is no right to counsel in civil cases.  *See Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014).  In this case, given the

undisputed record, the presence of attorney representation would not change the outcome. Therefore, the court will deny plaintiff's request.

ORDER

IT IS ORDERED that:

1) Defendants Esser and Oswald's motion for summary judgment (dkt. #23) is GRANTED.

2) Plaintiff Travanti Dominique Schmidt's claims for excessive force are DISMISSED without prejudice for failure to exhaust administrative remedies as required by 42 U.S.C. §1997a(e).

3) Plaintiff's motion for assistance in recruiting counsel (dkt. #32) is DENIED.

4) Defendants' motion to strike trial date (dkt. #37) is DENIED AS MOOT.

5) The clerk of court is directed to close this case.

Entered this 15th day of October, 2018.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge